No. 12-1294 (L)
(No. 12-1978)

---

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

---

UNION CARBIDE CORPORATION,

*Petitioner*,

v.

VIRGINIA RICHARDS, widow of Arlie Richards, and
DIRECTOR, OWCP, United States Department of Labor,

*Respondents.*

---

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

---

REPLY BRIEF OF PETITIONER,
UNION CARBIDE CORPORATION

---

Kathy L. Snyder
Amy Jo Holley
Jackson Kelly PLLC
P.O. Box 619
Morgantown, WV  26507
(304) 284-4100
*Counsel for Union Carbide Corp.*

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................1

II.  ARGUMENT IN REPLY..............................................................................1

The ACA amendments to the BLBA do not void the res judicata effect of a final decision denying benefits in a prior survivor's claim.....................................................................................1

1.  Contrary to the Board's holding, Congress did not authorize departure from the fundamental principle of res judicata in the ACA amendments to the BLBA.................1

2.  The Board's holding conflicts with precedent regarding the application of res judicata in claims under the BLBA..........8

3.  The Board erred in relying on Lawlor to foreclose the application of res judicata because the ACA amendments to the BLBA did not create a new cause of action. .................10

   a.  Res judicata bars subsequent claims for federal black lung survivors' benefits because they arise from the same transactional nexus as the previously denied claims. ...........................................11

   b.  No legal basis exists for a *per se* statutory-amendment exception to the doctrine of res judicata. ...............................................................15

4.  The Board erred by affording the Director's litigation position Chevron deference. ....................................26

III.  CONCLUSION..............................................................................................30

IV.  ADDENDUM OF STATUTES, RULES, and REGULATIONS

V.  CERTIFICATE OF COMPLIANCE

VI.  CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Alvear-Velez v. Mukasey,
    540 F.3d 672 (7th Cir. 2008) ................................................................*passim*

Astoria Fed. Savings & Loan Assoc. v. Solimino,
    501 U.S. 104 (1991)..............................................................................2

Ball v. Memphis Bar-B-Q Co.,
    228 F.3d 360 (4th Cir. 2000) ..............................................................27

Bouchat v. Bon-Ton Dep't Stores, Inc.,
    506 F.3d 315 (4th Cir. 2007) ..............................................................12

Chevron, U.S.A., Inc., v. Natural Res. Def. Counsel, Inc.,
    467 U.S. 837 (1984)................................................................26, 27, 29

Clodfelter v. Republic of Sudan,
    No. 11-2118 (4th Cir. Oct. 18, 2011) ..................................................25

Dalombo Fontes v. Gonzales,
    498 F.3d 1 (1st Cir. 2007)....................................................................20

Duhaney v. Att'y Gen'l of the United States,
    621 F.3d 340 (3d Cir. 2010) ................................................................20

Harnett v. Billmann,
    800 F.2d 1308 (4th Cir. 1986) ............................................................14

Island Creek Coal Co. v. Colegrove,
    No. 12-2105 (4th Cir. appeal docketed Oct. 23, 2012) ......................26

Kelly v. Robinson,
    479 U.S. 36 (1986)................................................................................9

Kumar v. Republic of Sudan,
    No. 2:10-cv-171, 2011 WL 4369122 (E.D. Va. Sept. 19, 2011)
    (unpub.)......................................................................................... 25, 26

Lawlor v. National Screen Serv. Corp.,
    349 U.S. 322 (1955)........................................................... 10, 24, 25

Ljutica v. Holder,
    588 F.3d 119 (2d Cir. 2009) ...........................................................20

Maldonado v. U.S. Att'y Gen'l,
    664 F.3d 1369 (11th Cir. 2011) .....................................................20

Marvel Characters, Inc. v. Simon,
    310 F.3d 280 (2d Cir. 2002) ................................................. *passim*

Nash Cnty. Bd. of Educ. v. Biltmore Co.,
    640 F.2d 484 (4th Cir. 1981) ........................................... 11, 14, 15

Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,
    556 F.3d 177 (4th Cir. 2009)..........................................................12

Pittston Coal Grp. v. Sebben,
    488 U.S. 105 (1988)....................................................................8, 9

Pittston Co. v. United States,
    199 F.3d 694 (4th Cir. 1999) .........................................................13

Plaut v. Spendthrift Farm, Inc.,
    514 U.S. 211 (1995).......................................................................26

Pueschel v. United States,
    369 F.3d 345 (4th Cir. 2004) ................................................. 11, 14

Skidmore v. Swift & Co.,
    323 U.S. 134 (1944)..................................................26, 27, 28, 29

United States v. Fisher,
    864 F.2d 434 (7th Cir. 1988) ............................................. 17, 18, 19

United States v. Home Concrete & Supply, LLC,
    132 S. Ct. 1836 (2012)...................................................................29

United States v. Wells,
       519 U.S. 482 (1997)..................................................................................9

Water Quality Ass'n Employees' benefit Corp. v. United States,
       795 F.2d 1303 (7th Cir. 1986) ..............................................................3

West Virginia CWP Fund v. Billups,
       No. 12-1654 (4th Cir. appeal docketed May 21, 2012)..................................7

West Virginia CWP Fund v. Hawkins,
       No. 12-1769 (4th Cir. appeal docketed June 19, 2012)..................................7

West Virginia CWP Fund v. Stacy,
       671 F.3d 378 (4th Cir. 2011), cert. denied, 80 U.S.L.W. 3639
       (U.S. Oct. 1, 2012) (No. 11-1342)........................................................ *passim*

Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan,
       263 F.3d 196 (2d Cir. 2001) ...............................................................23

## STATUTES

Immigration and Nationality Act
       8 U.S.C. § 1251(a)(2)(A)(i) ...............................................................16

Black Lung Benefits Act
       30 U.S.C. § 932(*l*)........................................................................*passim*

Black Lung Benefits Reform Act of 1977
       Pub. L. No 95-239, 92 Stat. 95 (Mar. 1, 1978)............................................4, 8

Illegal Immigration Reform and Immigrant Responsibility Act of 1996
       Pub. L. No. 104-208, § 321(b), 110 Stat. 3009 (Sept. 30, 1996) .................21

Patient Protection and Affordable Care Act,
       Pub. L. No. 111-148, § 1556  (Mar. 23, 2010)......................................*passim*

iv

# REGULATIONS

Part 718 - Standards for Determining Coal Miners' Total Disability or Death Due to Pneumoconiosis
> 20 C.F.R. § 718.205 ................................................................................ 13

Part 725 - Claims for Benefits under Part C of Title IV of the Federal Mine Health and Safety Act, as amended
> 20 C.F.R. § 725.202(d) ......................................................................... 12
> 20 C.F.R. § 725.212 .............................................................................. 12
> 20 C.F.R. § 725.212(a)(1) ..................................................................... 11
> 20 C.F.R. § 725.218 .............................................................................. 12
> 20 C.F.R. § 725.222 .............................................................................. 12
> 20 C.F.R. § 725.308(a) .......................................................................... 11
> 20 C.F.R. § 725.309(d)(3) ..................................................................... 11

Standards for Processing, Adjudication, and Payment of Claims under the Federal Coal Mine Health and Safety Act of 1969, as amended
> 43 Fed. Reg. 36,785 (Aug. 18, 1978) ................................................... 2

# OTHER AUTHORITIES

J. G. Sutherland, 2A Sutherland Statutory Construction
> § 51.02 (4th ed. 1984) ........................................................................... 3

Norman J. Singer, 2B Sutherland Statutory Construction
> § 51.02 (5th ed. 1992) ........................................................................... 3

# I.     INTRODUCTION

Union Carbide Corporation ("Union Carbide") filed a motion to designate this claim as the lead case on October 19, 2012.  The Court granted that motion by Order issued on November 9, 2012.   In that same Order, the Court also consolidated this claim with <u>Peabody Coal Co. v. Morgan</u>, No. 12-1978.

Union Carbide filed its Opening Brief on November 26, 2012.  After seeking an extension, the Claimant and Director filed Response Briefs on January 14, 2013.  The Washington and Lee University Black Lung Clinic filed an amicus brief supporting the awards of benefits to Mrs. Richards and Mrs. Morgan on January 22, 2013.   The Court extended the deadline for the reply briefs until February 11, 2013.

# II.  ARGUMENT IN REPLY

**The ACA amendments to the BLBA do not void the res judicata effect of a final decision denying benefits in a prior survivor's claim.**

> **1.     Contrary to the Board's holding, Congress did not authorize departure from the fundamental principle of res judicata in the ACA amendments to the BLBA.**

Section 1556 of the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, § 1556 (Mar. 23, 2010), is silent regarding its effect on previously denied claims under the Black Lung Benefits Act ("BLBA"), 30 U.S.C.

§ 932(a).  The Benefits Review Board ("Board") inferred from this congressional silence that § 1556 "does not prohibit" its application to subsequent survivor's claims.  JA 180.  Such an inference is contrary to the legislative and regulatory history of the BLBA, judicial precedent, and general policy favoring the application of res judicata.

The Board erred by starting with the proposition that because § 1556 fails to address its applicability where the survivor had a previously denied claim, Congress must have intended to override the preclusive effect of those prior denials.  The Board's logic is inverted.  Given the longstanding applicability of the res judicata doctrine to previously denied survivors' claims under the BLBA,[1] the proper starting point is to presume res judicata applies unless Congress explicitly says otherwise.  The more reasonable inference derived from § 1556's silence is that previously denied claims retain their preclusive effect.  See Astoria Fed. Savings & Loan Assoc. v. Solimino, 501 U.S. 104, 109-10 (1991) (as administrative estoppel is favored as a matter of general policy, this presumption is

---

[1]     See Standards for Processing, Adjudication, and Payment of Claims, 43 Fed. Reg. 36772, 36785 (Aug. 18, 1978) (amending the regulations to require a subsequent survivor's claim to be denied unless the later claim is a request for modification filed within a year of the prior denial of benefits).

properly accorded sway based upon legislative default applying where Congress has failed to expressly or impliedly evince any intention on this issue).

The BLBA's history reflects a decided congressional disinclination to rely on silent intentions in place of explicit instructions regarding the applicability of statutory amendments to previously denied claims. See Union Carbide's Opening Br. at 20 (chart of Congress' explicit language explaining how amendments to the BLBA in 1972, 1978, and 1981 were to affect previously denied claims). Congress, by specifically addressing whether amendments to the BLBA will affect previously denied claims in three prior amendments, has established a pattern within the BLBA's statutory framework. When Congress relies on or establishes a pattern of explicitly addressing a certain issue within a specific statutory framework, its departure from that method within that framework and its subsequent silence on the issue is significant.[2]

---

[2]    See, e.g., Water Quality Ass'n Employees' Benefit Corp. v. United States, 795 F.2d 1303, 1307–08 (7th Cir. 1986) ("where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed") (quoting 2A Sutherland Statutory Construction § 51.02 (4th ed. 1984))); Norman J. Singer, 2B Sutherland Statutory Construction § 51.02, at 121 (5th ed. 1992) ("It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter.").

The history of 30 U.S.C. § 932(*l*) demonstrates Congress intended for previously denied claims to retain their preclusive effect. Congress originally added § 932(*l*) to the BLBA in 1977, thereby providing automatic entitlement to benefits for survivors of miners receiving federal black lung benefits at the time of their deaths. See Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, 92 Stat. 95 (Mar. 1, 1978). Congress required the Department of Labor ("DOL") to review each claim, upon request, that was denied "on or before the effective date" of the amendments and to "approve any such claim . . . if the provisions of this part, as so amended, require that approval." Id. Thus, when Congress originally inserted § 932(*l*) into the BLBA, it explicitly instructed that the provision could be applied to previously denied claims.

That § 1556 contains no such language, when reactivating § 932(*l*) after a hiatus of nearly thirty years, leads to the logical conclusion that Congress' silence here is purposeful. The most reasonable inference derived from Congress' departure from its legislative pattern with § 1556 is that it did not intend to abrogate the res judicata effect of previously denied claims.

The Director completely ignores the BLBA's significant legislative and regulatory history in his defense of the Board's reasoning. The Claimants argue that Congress' history of explicitly stating if it intends for amendments to the

4

BLBA to apply to previously denied claims is irrelevant because this Court has already determined the plain language of § 1556(c) makes it applicable to all claims. Cl.'s Br. at 33. This Court's decision in West Virginia CWP Fund v. Stacy, 671 F.3d 378 (4th Cir. 2011), however, did not address whether § 1556 abrogated the preclusive effect of prior, finally-denied survivors' claims. As noted by the Board's dissenting opinion in Richards, Stacy supports Union Carbide's position rather than the Board's holding. JA 190 (Boggs, J., dissenting) ("Contrary to . . . Stacy, the majority's interpretation would remove the mitigating limitations of the plain words of the statute" and "render Congress' combination of these requirements meaningless.").

Richards effectively nullifies the mitigating language in § 1556(c) which explicitly limits automatic entitlement to claims filed within the specified time frame. The purpose of this provision is to mitigate § 1556's financial toll by limiting operators' newly enhanced liability to claims filed within this five-year window:

> Far from arbitrarily ignoring the potential financial burden that it placed on coal operators, Congress mitigated the retroactive impact of Section 1556 by limiting its application to "claims filed . . . after January 1, 2005, that are pending on or after" March 23, 2010—the

5

date the PPACA was enacted. **Consequently, operators must only pay automatic survivors' benefits for claims filed in or after 2005.**

Stacy, 671 F.3d at 384 (emphasis added). Yet under the Director's interpretation, which the Board adopted, *any* survivor whose husband was receiving federal black lung benefits at the time of his death may now request and automatically receive survivor's benefits, even if the denial of her previous survivor's claim has become final.[3] This result eviscerates Congress' intent to mitigate the retroactive impact of the amendments in § 1556.

The Respondents contend the Board's holding in Richards follows the limiting language in § 1556(c) because liability in subsequent survivors' claims is

---

[3]    Between January 1, 1981 (limiting language added to § 932(*l*)) and March 23, 2010 (enactment of the ACA), a survivor had to establish the miner's death was due to coal workers' pneumoconiosis to receive benefits. Pursuant to the Board's holding in Richards, survivors whose claims were denied during those twenty-nine years because they could not establish death causation can now file new claims and will be automatically entitled to benefits if the miners were receiving benefits at the time of their deaths.

Citing unspecified "Director's records," the Director alleges the practical effect of the ACA "time constraints" reduces the number of actual subsequent survivors' claims. Dir.'s Br. at 27 n.14. Even assuming the accuracy of these statistics for the purpose of argument (which is necessitated by the Director's failure to provide a citation to a publically available source), the Director concedes nearly 1,000 potentially eligible survivors can now file subsequent claims and receive derivative benefits under § 1556. Id. Thus, contrary to the Director's assertions, the "practical effect" of the Board's decision in Richards on coal mine operators and their insurers is substantial.

retroactive only to the month following the date of the final denial of the prior survivor's claim.    JA 182; Dir.'s Br. at 34-35; Cl.'s Br. at 36 n.11.    The Respondents, however, fail to explain or acknowledge that the Board's holding results in retroactive liability in some claims which predates the January 1, 2005 retroactive liability limit set by Congress in § 1556.[4]

As the pattern of amendments to the BLBA reveals, Congress has explicitly indicated when it intends for the res judicata effect of prior decisions to be limited. No such limiting language is included in the ACA amendments.  Accordingly, the Board erred in concluding that the ACA amendments "mandate" disrupting the res judicata effect of previously denied survivors' claims.

_____

[4]    While not an issue in Mrs. Richards' or Mrs. Morgan's claims, two cases being held in abeyance pending Richards illustrate this point.  See West Virginia CWP Fund v. Hawkins, No. 12-1769 (4th Cir. appeal docketed June 19, 2012) (final denial of prior survivor's claim was on August 14, 2000 – Director's Exhibits 2 at 4); West Virginia CWP Fund v. Billups, No. 12-1654 (4th Cir. appeal docketed May 21, 2012) (final denial of prior survivor's claim was on July 31, 2003 – Director's Exhibits 1 at 6).  Pursuant to the Director's position and the Board's holding in Richards, liability in Hawkins is retroactive to September 2000 and in Billups to August 2003 – both predating the January 1, 2005 congressional limit on retroactive liability in § 1556.

2.    **The Board's holding conflicts with precedent regarding the application of res judicata in claims under the BLBA.**

Union Carbide agrees with the Director that nothing in § 1556 of the ACA authorizes reopening of survivors' claims that have been denied and from which all rights to appeal or reconsideration have terminated. See Dir.'s Br. at 31-32. Union Carbide also agrees that the denials of Mrs. Richards' and Mrs. Morgan's prior claims are final and cannot be reopened. Id. Where the parties' positions differ is regarding the preclusive effect of those prior denials.

Any confusion regarding "reopening" of these prior survivors' claims stems from the Director's attempts to distinguish Pittston Coal Co. v. Sebben, 488 U.S. 105 (1988). Id. The Director contends Sebben is distinguishable because Mrs. Richards and Mrs. Morgan are not seeking to "reopen" their prior claims. Id. With this factual distinction the Director attempts to minimize the significance of Sebben by advocating an overly narrow interpretation of its holding.

The Black Lung Benefits Reform Act of 1977 ("BLBRA") provided that previously denied claims would, upon claimants' requests, be reopened and readjudicated under new interim standards (20 C.F.R. Part 727). Sebben, 488 U.S. at 110. The Supreme Court held that a portion of those interim regulations were invalid. Id. at 113. The Court, however, refused to allow the claims decided under

the invalid regulations to be readjudicated if the denials had become final.  Id. at 122.  Thus, Sebben establishes the fundamental principles that res judicata applies in federal black lung claims and that changes in the law do not negate the preclusive effect of a finally denied claim.  Id.

Sebben and the history of the BLBA establish Congress knew when it drafted the ACA that res judicata applies in federal black lung claims.  See United States v. Wells, 519 U.S. 482, 495 (1997) (courts "presume that Congress expects its statutes to be read in conformity with [Supreme Court] precedent."); Kelly v. Robinson, 479 U.S. 36, 46-47 (1986) (noting that when Congress enacts and modifies statutes, it is deemed to know established judicial interpretations and if Congress intends to change the legal landscape, it will make its intent specific and will not silently abrogate widely applicable judicial interpretations).  Because Congress did not authorize departure from the fundamental principle of res judicata in § 1556 of the ACA, as it has done with prior amendments, it should be assumed that Congress' silence was intentional.

In an attempt to distinguish Sebben, the Director argues that any findings made in the prior decisions denying survivors' benefits remain intact.  See Dir.'s Br. at 31-32.  The Director contends that the prior decisions and orders denying survivors' benefits to Mrs. Richards and Morgan are not "overturned" or

"abrogated" by the subsequent decisions awarding them benefits, and that the prior decisions "are fully respected."  Dir.'s Br. at 34.   The Claimants also assert the prior decisions denying benefits are "not upset."  Cl.'s Br. at 25 n.7.  Contrary to the Respondents' contentions, the subsequent decisions finding these survivors *are* entitled to benefits nullify the prior final decisions finding they *were not* entitled to benefits.  The prior final decisions were not "fully respected."

Accordingly, in holding that a final denial of benefits in a survivor's claim does not bar receipt of survivor's benefits under § 1556 of the ACA, the Board erred by failing to adhere to the fundamental principle of res judicata.

> **3.    The Board erred in relying on <u>Lawlor</u> to foreclose the application of res judicata because the ACA amendments to the BLBA did not create a new cause of action.**

Section 1556 of the ACA applies to all claims that meet its stated conditions. <u>Stacy</u>, 671 F.3d at 388.   Contrary to the Director's and Claimants' contention, however, neither the plain language of § 1556 nor <u>Stacy</u> address or resolve whether res judicata bars subsequent survivors' claims.  <u>See</u> Dir.'s Br. at 21; Cl's Br. at 17. While either a miner or survivor can file a claim within the parameters of § 1556,

10

that claim may still be barred for reasons such as a statute of limitations, remarriage, or res judicata.[5]

Res judicata forecloses subsequent litigation where: (1) there has been a final judgment on the merits in a prior suit; (2) there is an identity of the cause of action in both the earlier and the later suit; and (3) there is an identity of parties or their privies in the two suits.  Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004) (citing Nash Cnty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981)).  As the Respondents concede that the first and third prongs of the Nash test are met, only the "identity of the cause of action" between the initial claims for survivors' benefits and the subsequent claims is in question.  Because no new cause of action is present, res judicata bars the subsequent survivors' claims.  Accordingly, the Board's decision should be reversed, or vacated and remanded.

> **a.    Res judicata bars subsequent claims for federal black lung survivors' benefits because they arise from the same transactional nexus as the previously denied claims.**

The Claimants contend res judicata does not bar their subsequent survivors' claims because the change in the law with the passage of the ACA created a "new

---

[5]    See 20 C.F.R. §§ 725.308(a), 725.212(a)(1), 725.309(d)(3).

11

condition of entitlement," and therefore, a "new cause of action." Cl.'s Br. at 20-21. Contrary to the Claimants' reasoning, these terms are not synonymous or interchangeable between the different contexts of federal black lung claims and res judicata analysis. When the correct meaning is given to the respective terms, the applicable law establishes that res judicata bars Mrs. Richards' and Mrs. Morgan's subsequent survivors' claims.

"Condition of entitlement" is a term of art defined by regulation in the federal black lung program and refers to an element a claimant must establish to be entitled to benefits. See 20 C.F.R. §§ 725.202(d), 725.212, 725.218, 725.222. "Cause of action" is a term of art used by courts in addressing the doctrine of res judicata and refers to the transaction underlying a particular suit. See, e.g., Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 201-11 (4th Cir. 2009) (the transaction, not the legal theory pursued, is controlling for determining if a prior suit has identicality necessary for preclusive effect); Bouchat v. Bon-Ton Dept. Stores, Inc., 506 F.3d 315, 327 (4th Cir. 2007) ("The requirement that claims in the first and subsequent actions be identical is met if 'the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'"). Contrary to the Claimants' contention, a new "condition of

entitlement" in a federal black lung claim does not equate to a new "cause of action" as defined in res judicata analysis.

Claimants assert that the core nucleus of operative facts in their initial and subsequent claims differs. Cl.'s Br. at 30-31. The Claimants cite to 20 C.F.R. § 718.205[6] to demonstrate the "facts" at issue in their initial claims and to § 1556 of the ACA to demonstrate the "facts" at issue in their subsequent claims. Cl.'s Br. at 30. The Claimants thereby confuse the "conditions" required to prove entitlement to benefits under the BLBA with the "transaction" that gives rise to a claim for purposes of res judicata analysis. "Conditions of entitlement" and "causes of action" (or transactions) are distinct terms of art.

"Transaction" in the res judicata context is defined as: "a natural grouping or common nucleus of operative facts." <u>Pittston Co. v. United States</u>, 199 F.3d 694, 704 (4th Cir. 1999) (adopting the Restatement (Second) of Judgments definition of a "transaction"). Here, the *transaction* that gives rise to both of Mrs. Richards' claims is identical—Mr. Richards' employment with Union Carbide, development

---

[6]    The Claimants incorrectly cite to 20 C.F.R. § 718.205 to demonstrate the "facts" at issue in their initial claims. Cl.'s Br. at 30. That regulation only sets forth the methods in which a claimant can prove death due to pneumoconiosis. The "conditions of entitlement" for a survivor's claim are set forth in 20 C.F.R. § 725.212.

13

of coal workers' pneumoconiosis, and death. That Mrs. Richards' subsequent survivor's claim now rests on a different legal theory (automatic or derivative benefits), does not affect the applicability of res judicata to her previous claim. See, e.g., Harnett v. Billmann, 800 F.2d 1308, 1314 (4th Cir. 1986) ("Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief.").[7]

Like the Board's holding in Richards (see JA 180-81), the Claimants' argument is premised on the legally unsupported conclusion that a new "condition of entitlement" or "a new method of demonstrating entitlement to benefits" equates to a "new cause of action" for purposes of the application of res judicata. The ACA, however, did not create a "new cause of action" as defined in the res judicata context. The initial and subsequent survivors' claims here involve identical causes of action because they arise out of the same transaction, and therefore, are barred by res judicata.

---

[7]    See also Pueschel, 360 F.3d at 355 (explaining that facts of the suit, not identicality of the "claims asserted," controls, this Court held, "[w]ere we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims'. . . ."); Nash, 640 F.2d at 488 ("[T]he identity of two actions . . . will not be destroyed in the res judicata context simply because the two suits are based on different statutes.").

14

**b.   No legal basis exists for a *per se* statutory-amendment exception to the doctrine of res judicata.**

The Director does not specifically address whether the transactions involved in the Claimants' initial survivors' claims are substantially identical to their subsequent claims. Rather, the Director seeks to divert analysis away from the <u>Nash</u> transactional test by advocating for the adoption of essentially a *per se* "statutory-amendment exception" to res judicata. <u>See</u> Dir.'s Br. 38; <u>see also</u> Cl.'s Br. at 21-22. Such a sweeping exception to res judicata is neither warranted nor legally supported.

The Respondents rely on <u>Alvear-Velez v. Mukasey</u>, 540 F.3d 672 (7th Cir. 2008), other immigration cases, and <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286–88 (2d Cir. 2002), to support adoption of a *per se* statutory-amendment exception to res judicata. They overextend the holdings of these cases which fail to support such an exception.

In <u>Alvear-Velez</u>, the Seventh Circuit held that res judicata did not bar a subsequent deportation proceeding against Mr. Alvear-Velez based on a statutory amendment enacted subsequent to his initial deportation proceedings. <u>Alvear-Velez</u>, 540 F.3d at 681. Mr. Alvear-Velez pled guilty to sexual assault in 1993. Immigration authorities brought a deportation proceeding against him under

8 U.S.C. § 1251(a)(2)(A)(i), which authorized the deportation of aliens convicted of crimes of moral turpitude within five years of entry and who have been imprisoned or sentenced to imprisonment for one year or more.  In 1994, an immigration judge determined that Mr. Alvear-Velez had not been sentenced to imprisonment for more than a year, and therefore, dismissed the deportation proceedings.  Id. at 675.  Two years later, Congress amended the statutory definition of aggravated felony to include sexual abuse of a minor and "specifically applied that new definition retroactively 'regardless' of how long ago the 'conviction was entered.'"  Id. at 679 (quoting Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 321 (1996)).  Under this new definition, Mr. Alvear-Velez's 1993 crime constituted an aggravated felony, a deportable offense.  Id.  At issue was whether res judicata barred the immigration authorities from bringing a second deportation proceeding on the basis of the same crime underlying in the previous deportation proceeding.  The Seventh Circuit held that res judicata did not bar a second deportation proceeding.  Id. at 680-81.

Neither Alvear-Velez nor the authorities cited within that decision support the existence of a general or *per se* change-in-statutory-law exception to the rule of res judicata.  The cases Alvear-Velez cites to support the assertion that "courts

16

consistently have refused to apply res judicata to preclude a second suit that is based on a claim that could not have been asserted in the first suit" concern the jurisdiction of the original tribunal, and thus are readily distinguishable. See id. at 678.

The Seventh Circuit's decision in Alvear-Velez placed heavy emphasis on its earlier decision in United States v. Fisher, 864 F.2d 434 (7th Cir. 1988). In Fisher, the Environmental Protection Agency ("EPA") filed an action under the 1986 amendments to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") to obtain access to Mr. Fisher's farm for the purpose of monitoring soil and groundwater. Fisher, 864 F.2d at 436. The EPA had previously obtained a consent decree under its initial CERCLA action prior to the 1986 amendments. Id. The purpose of the decree was to monitor the groundwater and prevent Mr. Fisher from handling, storing, or disposing of toxic wastes in a hazardous manner. Id. Mr. Fisher argued the consent decree entered during the first litigation precluded the EPA from bringing the second suit. Id. at 439. The Fisher Court did not bar the subsequent action, despite noting that "[t]he passage of a new statute, although it may require the modification of the decree, does not alter the general principle that a consent decree bars a fresh lawsuit

arising from the same dispute that underlay the litigation in which the decree was entered." Id. (citations omitted).

Alvear-Velez interpreted Fisher to hold that "statutory changes that occur after the previous litigation has concluded may justify a new action." Alvear-Velez, 540 F.3d at 678. In relying on Fisher to support a *per se* finding that a change in a statute precludes a finding of res judicata, Alvear-Velez overextended Fisher. Fisher does not stand for the proposition that a change in statutory law permits a second suit based on the same transaction at issue in an earlier case with a final judgment. Rather, Fisher rests on the undisputed proposition that new facts give rise to new claims, and on the allocation of power between Congress and the administrative agencies it created.

First, as Fisher aptly observed but Alvear-Velez failed to note, there was no indication that all the hazardous material and activities at issue in the second Fisher suit were present at the time of the first suit. Fisher, 864 F.2d at 439. Indeed, "leakage occurring afterward would create a fresh cause of action." Id. Fisher's holding that new facts occurring since the time of the initial action give rise to new claims is uncontested, but inapplicable as no new facts occurred between the initial and subsequent survivors' claims at issue here.

18

Second, Fisher addresses the allocation of power among Congress and the agencies it creates. As Fisher explained, "[t]he EPA has no authority to refuse to enforce the statute just because its staff made commitments before Congress" enacted the Superfund Amendments. Id. Thus, Fisher suggests that agencies' actions cannot negate Congress' authority to establish new standards and procedures by which agencies must ensure the public health and safety. In Fisher, Congress did no more than that—impose a *new* inspection regime on *continuing* activity. That Congress can do as much does not mean that it can also alter the legal effect of *concluded* activity that has already been the subject of a final judgment, such as the survivors' claims at issue here. Thus, contrary to Alvear-Velez's suggestion, Fisher does not support the existence of a *per se* statutory-amendment exception to res judicata.

Furthermore, Alvear-Velez was expressly "limited to the peculiar circumstances before us—the res judicata effect of an administrative final judgment rendered prior to a congressional decision to expand the avenues of relief available *and to make those additional avenues of relief retroactive*." Alvear-Velez, 540 F.3d at 681 (emphasis added). The statutory change in Alvear-Velez applied retroactively "regardless" of how long ago the "conviction was entered." Id. at 679. Not applying res judicata was therefore consistent with the explicitly

19

stated congressional intent. The ACA amendments to the BLBA, in contrast, reflect Congress' desire for only a limited period of retroactivity. The Board's holding abrogates congressional intent by expanding the retroactive reach of the ACA amendments.

In addition to Alvear-Velez, the Director relies on four other immigration cases to urge this Circuit to adopt a *per se* statutory-amendment exception to res judicata, including Maldonado v. United States Attorney General, 664 F.3d 1369 (11th Cir. 2011), Duhaney v. Attorney General of the United States, 621 F.3d 340 (3d Cir. 2010), Ljutica v. Holder, 588 F.3d 119 (2d Cir. 2009), and Dalombo Fontes v. Gonzales, 498 F.3d 1 (1st Cir. 2007). Dir.'s Br. at 43-44, 47-48. Like Alvear-Velez, these four cases involve deportation proceedings in which the aliens successfully challenged their initial deportation proceedings following criminal convictions. Subsequently, after the deportation proceedings were final, Congress enacted the IIRIRA in 1996. The Government again commenced deportation proceedings against these individuals. Each alien petitioner was ordered deported, and each petitioned his respective circuit court for relief arguing that res judicata barred the most recent deportation proceeding. Each circuit court held res judicata did not apply.

Like <u>Alvear-Velez</u>, these cases do not support a *per se* statutory-amendment exception to res judicata because the IIRIRA explicitly addressed the applicability of res judicata.  IIRIRA, Pub. L. No. 104-208, Div. C., § 321(b), 110 Stat. 3009-628 (1996).  The relevant portion of the IIRIRA provided that it "applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."  <u>Id.</u>  Because the statutory text of the IIRIRA specifically addressed the applicability of res judicata, the cited immigration cases do not support the *per se* statutory-amendment exception the Respondents ask this Court to adopt.

Unlike the IIRIRA amendments, as well as prior amendments to the BLBA, the ACA did not address its res judicata effect on previously denied claims.  <u>See</u> Pet.'s Opening Br. at 18-25 (addressing congressional history as relates to the BLBA and ACA).  Nothing in the language of § 1556 of the ACA suggests that Congress intended to permit relitigation of a "cause of action" the claimant already lost on the merits.  Section 1556 bars retroactive application of all claims except those filed after January 1, 2005 and pending on or after March 23, 2010.  The Respondents' positions rest on the unsupported premise that § 1556 was intended to abrogate the res judicata effect of prior, finally-denied claims despite the

21

absence of any language in the provision or in the legislative history to support that contention.

In addition to immigration cases, Respondents rely on <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286–88 (2d Cir. 2002), for the proposition that res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action. Dir.'s Br. at 44-45; Cl.'s Br. at 27-29. In <u>Marvel Characters</u>, Joe Simon, creator of comic book hero "Captain America," sued the publishers in a state and federal action claiming the right to renew the copyright on the comics under the Copyright Act of 1909. <u>Id.</u> at 283. The parties settled both actions. <u>Id.</u> As part of that settlement, Simon stipulated that he had created Captain America as "work-for-hire" and had assigned all renewal rights to the publisher. <u>Id.</u> Subsequently, Congress enacted the Copyright Act of 1976, which included a new termination right allowing authors to terminate an assignment of a copyright "notwithstanding any agreement to the contrary," so long as the work was not one for hire. <u>Id.</u> at 284. Simon then brought suit under the 1976 Act. The Second Circuit held res judicata did not apply to preclude Simon's action under the 1976 Act because the author's "termination right" did not exist at the time he settled the prior suits, and therefore,

"the Prior Actions could not have resolved the question of whether Simon was entitled to termination rights." Id. at 287.

Marvel Characters does not support the proposition that a *per se* statutory-amendment exception to res judicata exists and it is distinguishable on several grounds. First, with the language "notwithstanding any agreement to the contrary," Congress explicitly addressed and nullified any res judicata effect that previous agreements would have on this newly created right of termination. Id. at 284. Unlike the statute at issue in Marvel Characters, § 1556 contains no such language abrogating the effects of res judicata.

Second, in the Copyright Act of 1976, Congress included a new right for authors to terminate a prior assignment of a copyright. The Second Circuit's language in Marvel Characters establishes that res judicata still applied to the old rights (the entitlement to the initial 28-year renewal period) that Simon settled in the prior agreement:

> Applying Yoon's[8] reasoning here, it is clear that Simon is not precluded from claiming that he is the author of the Works for purposes of exercising the termination right under § 304(c). **While Simon would be precluded from claiming that he was entitled to**

---

[8]    Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196 (2d Cir. 2001).

**benefits flowing from the initial twenty-eight year renewal period, that is not his claim**.  He is claiming that he is entitled to terminate Marvel's copyright in the Works, a claim that did not exist when the Prior Actions were settled.

Id. at 288 (emphasis added).  Unlike the Copyright Act of 1976, § 1556 of the ACA did not create a *new right*.  Mrs. Richards and Mrs. Morgan are claiming entitlement to the same thing in both their prior and subsequent claims—survivors' benefits.  Thus, res judicata bars these subsequent survivors' claim even under the rationale provided in Marvel Characters.

Finally, Marvel Characters relies heavily on Lawlor v. National Screen Serv. Corp., 349 U.S. 322 (1955).  Id. at 287.  Lawlor is distinguishable from the subsequent survivors' claims at issue here because it involved ongoing actions that occurred between the settlement of the first lawsuit and the filing of the subsequent action.  See Pet.'s Opening Br. at 35-37 (discussing the applicability of Lawlor).  In Lawlor, the parties settled the lawsuit, but several years later the petitioners again sued the original party, alleging the primary respondent *had committed further illegal acts* since settling the original lawsuit.  Lawlor, 310 F.3d at 325.  In rejecting the respondents' argument that the new lawsuit should be dismissed as res judicata due to the settlement of the previous suit, the Supreme Court explained, "there are new antitrust violations alleged here—deliberately slow deliveries and tie-in sales, among others—not present in the former action."  Id. at

24

328.  In these limited circumstances involving *new factual allegations* of violations committed since the conclusion of the previous lawsuit, the subsequent lawsuit constituted a new cause of action, and therefore, was not barred by res judicata. Id. As no new facts or continuing actions are present here, Lawlor is inapplicable. Accordingly, Marvel Characters and Lawlor do not support the Respondents' position or the Board's decision in Richards.

As a general rule, changes in the law do not overcome the effects of res judicata where the actions arise out of the same transaction. See, e.g., Kumar v. Republic of Sudan, No. 2:10-cv-171, 2011 WL 4369122, *11 (E.D. Va. Sept. 19, 2011) (unpub.) (finding res judicata barred a second lawsuit arising out of the U.S.S. Cole bombing despite a statutory amendment enacted subsequent to the first lawsuit providing for a private cause of action, and noting, "Some courts have suggested that there is an exception to this rule when the change in the law involves the creation of a new statutory cause of action.  The court views the weight of these precedents as doubtful, however, in light of the now-prevailing transactional approach to *res judicata*.").[9]   As a *per se* statutory-amendment

---

[9]    Kumar is currently pending review before this Court.  See Kumar, No. 2:10-cv-171, 2011 WL 4369122, appeal docketed, Clodfelter v. Republic of Sudan,
(Continued)

25

exception to res judicata is without legal foundation, the doctrine bars the Claimants' subsequent survivors' claims.[10]

### 4. The Board erred by affording the Director's litigation position <u>Chevron</u> deference.

The parties agree that the Director's position is not entitled to <u>Chevron</u> deference, but only <u>Skidmore</u> deference. <u>See</u> Dir.'s Br. at 28; Cl.'s Br. at 39-40.[11]

---

No. 11-2118 (4th Cir. Oct. 18, 2011). On November 20, 2012, <u>Clodfelter</u> was remanded to the Eastern District of Virginia for the limited purpose of completing certification to the Fourth Circuit Court of Appeals. Order Remanding for Limited Purpose, <u>Clodfelter</u>, No. 11-2118 (4th Cir. Nov. 20, 2012), ECF 24. This Court retains jurisdiction of <u>Clodfelter</u>. <u>Id.</u>

[10]    Failure to apply res judicata to preclude relitigation of survivors' claims also violates separation of powers when prior decisions denying benefits were affirmed by this Court or other Article III courts. <u>See</u> <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 228 (1995) (Congress may not deprive "judicial judgments of the conclusive effect that they had when they were announced," even if the elements of proof are later subsequently relaxed). While the issue of separation of powers does not directly affect Mrs. Richards' or Mrs. Morgan's claims, the issue is pertinent to at least one case currently on appeal before this Court. <u>See</u> <u>Island Creek Coal Co. v. Colegrove</u>, No. 12-2105 (4th Cir. appeal docketed Oct. 23, 2012) (after this Court affirmed the denial of her prior claim, Mrs. Colegrove filed a subsequent survivor's claim and the ALJ found her automatically entitled to survivor's benefits pursuant to the ACA amendments).

[11]    <u>See</u> <u>Chevron, U.S.A., Inc., v. Natural Res. Def. Counsel, Inc.</u>, 467 U.S. 837, 843-44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is
(Continued)

The Director's position only merits deference to the extent it has the "power to persuade." See Ball v. Memphis Bar-B-Q Co., 228 F.3d 360, 365 (4th Cir. 2000) ("Moreover, litigation positions taken in briefs . . . are 'entitled to respect' . . . only to the extent that those interpretations have the 'power to persuade.'"). Contrary to the Claimants' contention, the Board erroneously accorded the Director's interpretation Chevron deference instead of Skidmore deference. Cl.'s Br. at 38-39. The Board explained: "Since the Director is charged with administration of the Act, deference is generally granted to his position on issues involving the interpretation or application of the Act." JA 180. Thus, the Board implied the Director's position is deserving of deference not because of its persuasive power in its own right (Skidmore), but by virtue of the Director's responsibility as administrator of the statute via congressional delegation (Chevron). See Chevron, 467 U.S. at 843–44. Moreover, the only case the Board cited to explain the level of deference it accorded the Director was Chevron. JA 180. Even the Director

---

an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (the weight afforded an agency's judgment in a particular case depends upon the thoroughness of the agency's interpretation and its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade if lacking power to control).

admits that "the level of deference afforded by the three-member Board majority is unclear." Dir.'s Br. at 28 n.15. The Board's failure to review the Director's position under the correct level of deference is a prejudicial legal error.

The Director's interpretation should not be afforded even <u>Skidmore</u> deference because it nullifies the limitations on retroactive liability Congress included in § 1556(c) regarding automatic-entitlement claims. As Administrative Appeals Judge Boggs explained in her dissent:

> Contrary to the Fourth Circuit's analysis in <u>Stacy</u>, the majority's interpretation [which adopted the Director's interpretation] would remove the mitigating limitations of the plain words of the statute. Congress set into place not just one, but two requirements in Section 1556(c) of the PPACA: that the claim be filed after January 1, 2005 and that it be pending on or after March 23, 2010. The majority's interpretation renders Congress's combination of these requirements meaningless. Moreover, as employer notes, in the past, when Congress intended that amendments to the Act apply to previously denied claims, it explicitly so provided. Its choice not to do so here is telling.

JA 190 (Boggs, J., dissenting). Because Congress could not have intended an interpretation of § 1556 that vastly expands one of the statute's subsections by

abrogating another, the Director's interpretation is neither persuasive nor reasonable and should be accorded no deference.[12]

As evidenced by Congress' inclusion of limiting language in § 1556(c) and as acknowledged by this Court in Stacy, Congress intended to mitigate the retroactive impact of the amendments. Stacy, 671 F.3d at 384. As the Director's interpretation of the amendments is contrary to that congressional intent, the Director's position is not persuasive or "entitled to respect." Skidmore, 323 U.S. at

---

[12]    The Director notes the DOL intends to promulgate a final regulation by September 2013 (three and one-half years after enactment of the ACA), which will provide for automatic entitlement in subsequent survivors' claims. Dir.'s Br. at 20 n.11. The Director asserts this regulation would be entitled to Chevron deference. Id. This Court need not defer adjudication while the DOL formalizes an interpretation of § 1556 that abrogates that statute's express limitations on liability. Doing so would not alter the fundamental issue—the Court will still have to choose between one interpretation of § 1556 that honors Congress' intent for all provisions of the statute, and a contrary interpretation that expands the scope of one subsection by annulling express liability limitations contained in another subsection. Even under Chevron, the Director's interpretation does not merit deference—being an impermissible construction of the statute, it is neither "persuasive" nor "reasonable." See Chevron, 467 U.S. at 843 (where "a statute is silent or ambiguous with respect to the specific issue," a court asks "whether the agency's answer is based on a permissible construction of the statute"). Furthermore, this Court's interpretation of § 1556 would prevail over any subsequent, contrary interpretation the DOL may adopt. See generally United States v. Home Concrete & Supply, LLC, 132 S. Ct. 1836, 1843–44 (2012) (Supreme Court interpretation of a tax statute prevailed over the Government's conflicting interpretation contained in a later-enacted regulation).

140.    The Board's utilization of the wrong deference standard and improper deferral to the Director constitutes reversible error.


### III.    CONCLUSION

Union Carbide respectfully requests the decision and order affirming the award of benefits issued by the Board be reversed, or in the alternative, vacated and remanded for reconsideration in accordance with the BLBA and regulations.

Respectfully submitted,

**UNION CARBIDE CORPORATION,**

By Counsel,

/s/ Kathy L. Snyder
Kathy L. Snyder
WV Bar No. 5995
Amy Jo Holley
WV Bar No. 11390
Jackson Kelly PLLC
P.O. Box 619
Morgantown, WV  26507
(304) 284-4100

30

# IV.   ADDENDUM OF STATUTES, RULES, and REGULATIONS

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (Mar. 23, 2010):

> EQUITY FOR CERTAIN ELIGIBLE SURVIVORS.
>
> (a) REBUTTABLE PRESUMPTION.—Section 411(c)(4) of the Black Lung Benefits Act (30 U.S.C. 921(c)(4)) is amended by striking the last sentence.
>
> (b) CONTINUATION OF BENEFITS.—Section 422(l) of the Black Lung Benefits Act (30 U.S.C. 932(l)) is amended by striking '', except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981''.
>
> (c) EFFECTIVE DATE.—The amendments made by this section shall apply with respect to claims filed under part B or part C of the Black Lung Benefits Act (30 U.S.C. 921 et seq., 931 [sic] et seq.) after January 1, 2005, that are pending on or after the date of enactment of this Act.

30 U.S.C. § 932(*l*)(2012), in pertinent part:

> Failure to meet workmen's compensation requirements.
>
> (l) Filing of new claims or refiling or revalidation of claims of miners already determined eligible at time of death.  In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner.

20 C.F.R. § 718.205 (2012), in pertinent part:

> Death Due to Pneumoconiosis.
>
> (a) Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis. In order to receive benefits, the claimant must prove that:
>
> (1) The miner had pneumoconiosis (see § 718.202);

(2) The miner's pneumoconiosis arose out of coal mine employment (<u>see</u> § 718.203); and

(3) The miner's death was due to pneumoconiosis as provided by this section.

20 C.F.R. § 725.212 (2012), in pertinent part:

Conditions of entitlement; surviving spouse or surviving divorced spouse.

(a) An individual who is the surviving spouse or surviving divorced spouse of a miner is eligible for benefits if such individual:

(1) Is not married;

(2) Was dependent on the miner at the pertinent time; and

(3) The deceased miner either:

(i) Was receiving benefits under section 415 or part C of title IV of the Act at the time of death as a result of a claim filed prior to January 1, 1982; or

(ii) Is determined as a result of a claim filed prior to January 1, 1982, to have been totally disabled due to pneumoconiosis at the time of death or to have died due to pneumoconiosis. A surviving spouse or surviving divorced spouse of a miner whose claim is filed on or after January 1, 1982, must establish that the deceased miner's death was due to pneumoconiosis in order to establish entitlement to benefits, except where entitlement is established under § 718.306 of part 718 on a claim filed prior to June 30, 1982.

(b) If more than one spouse meets the conditions of entitlement prescribed in paragraph (a), then each spouse will be considered a beneficiary for purposes of section 412(a)(2) of the Act without regard to the existence of any other entitled spouse or spouses.

# V.    CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

No. 12-1294(L)    Caption:  Union Carbide Corp. v. Richards

1.    This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains **6,820** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using Microsoft Word  2010 Version in Times New Roman 14 point font.

/s/ Kathy L. Snyder
*Counsel for Union Carbide Corp.*

Dated:   February 11, 2013

3

# VI.    CERTIFICATE OF SERVICE

I, Kathy L. Snyder, do hereby certify that I served the **BRIEF OF PETITIONER, UNION CARBIDE CORPORATION** upon the following by electronic delivery through the CM/ECF system this **11th** day of February 2013.

**Electronic
& Regular:**

Patricia S. Connor
Clerk of Court
United States Court of Appeals for
 the Fourth Circuit
Lewis F. Powell, Jr.
United States Courthouse Annex
1100 E. Main St., Suite 501
Richmond, VA  23219-3517

**Electronic** - **CM/ECF:**

Joseph E. Wolfe
Ryan C. Gilligan
Wolfe, Williams, Rutherford &
 Reynolds
P.O. Box 625
Norton, VA  24273

Mark E. Solomons
Laura Metcoff Klaus
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

Sean G. Bajkowski,
Gary K. Stearman,
Sarah M. Hurley, Barry H. Joyner
U.S. Department of Labor
Office of the Solicitor
Frances Perkins Bldg., Suite N–2117
200 Constitution Avenue, N.W.
Washington, DC  20210

Timothy C. MacDonnell
Black Lung Legal Clinic
Room 106, Lewis Hall
Washington and Lee University
 School of Law
Lexington, VA 24450

/s/ Kathy L. Snyder
*Counsel for Union Carbide Corp.*

cc:    Rhonda Livesay
MO854821/kls