Nos. 12-1294 (L) and 12-1978

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

**FOR THE FOURTH CIRCUIT**

PEABODY COAL COMPANY.

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

and

MARY ELLEN MORGAN,

*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

## PETITIONER'S REPLY BRIEF

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... ii

I.      INTRODUCTION ....................................................................... 1

II.     ARGUMENT IN REPLY ............................................................. 3

    A.    The Plain Language of Section 1556 Does Not Support
        the Director's Position on Subsequent Survivors' Claims .......... 3

    B.    No Deference Is Due to an Agency's Position That Is
        a Work in Progress Expressed for the First Time in
        a Litigation Brief ....................................................................... 7

    C.    Ordinary Principles of Finality Bar "Refiled Claims"
        Because the Notion that Section 1556 Creates a
        New Cause of Action Lacks Any Relevant Support ................... 13

III     CONCLUSION ......................................................................... 22

CERTIFICATION OF COMPLIANCE

# TABLE OF AUTHORITIES

<u>Cases:</u>

*Alvear-Velez v. Mukasey*,
   540 F.3d 672 (7th Cir. 2009) ................................................ 14,15,16

*Astoria Fed. S & L Ass'n v. Solimino*,
   501 U.S. 104 (1991) ................................................ 2

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ................................................ 2,12

*Decker v. United States*,
   140 F.2d 375 (4th Cir. 1944) ................................................ 7

*Director, OWCP v. Newport News Shipbldg & Dry Dock Co.*,
   514 U.S. 122 (1995) ................................................ 10

*Hill v. Director, OWCP*,
   562 F.3d 264 (3d Cir. 2009) ................................................ 20

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
   520 U.S. 939 (1997) ................................................ 16

*Jordan v. Director, OWCP*,
   892 F.2d 482 (6th Cir. 1989) ................................................ 10

*Kucana v. Holder*,
   558 U.S. __ (2010) ................................................ 10

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994) ................................................ 16

*Maldonado v. U.S. Att'y General*,
   664 F.3d 1369 (11th Cir. 2011) ................................................ 16

*Marvel Characters, Inc. v. Simon*,
   310 F.3d 280 (2d Cir. 2002) ................................................ 17

ii

*Meekins v. United Transp. Union,*
  946 F.2d 1054 (4th Cir. 1991) .................................................... 18,19

*Metropolitan Stevedore Co. v. Rambo,*
  521 U.S. 121 (1997) ...................................................... 7

*Mills Music, Inc. v. Snyder,*
  469 U.S. 153 (1985) .................................................... 18

*Morrison-Knudsen Constr. Co. v. Director, OWCP,*
  461 U.S. 624 (1983) .................................................... 10

*Pittston Coal Group v. Sebben,*
  488 U.S. 105 (1988)...................................... 2,14,19,20

*Plaut v. Spendthrift Farm, Inc.,*
  514 U.S. 211 (1995) .................................................... 5

*Potomac Elec. Power Co. v. Director, OWCP,*
  449 U.S. 258 (1980) .................................................... 10

*Rapanos v. United States,*
  547 U.S. 715 (2006)................................................... 10

*Saudi v. Ship Switzerland,*
  93 Fed. Appx. 516 (4th Cir. 2004) ....................................... 18

*Skidmore v. Swift Co.,*
  323 U.S. 134 (1944) .................................................. 2,13

*United States v. Mead Corp.,*
  533 U.S. 218 (2001)................................................... 2,7

*United States v. Throckmorton,*
  98 U.S. 61 (1878)...................................................... 4

*Vartelas v. Holder,*
  132 S.Ct. 1479 (2012).......................................... 16,17,20

iii

*West Virginia Coal Workers' Pneumoconiosis Fund v. Director*,
    671 F. 3d 378 (4th Cir. 2011), *cert. denied*, _ U.S. _ (2012) .................. 9,12

*Wojtowicz v. Director, OWCP*,
    12 Black Lung Reporter (MB) 1-162 (Ben. Rev. Bd. 1989) ..................... 19

<u>Statutes and Regulations</u>:

Administrative Procedure Act, 5 U.S.C. §§ 551-559 ...................................... 7

Immigration and Nationality Act,
    8 U.S.C. § 1101(a)(13)(C)(v) .................................................... 16
    8 U.S.C. § 1101(a)(43) ........................................................... 15
    8 U.S.C. § 1227(a)(2)(a)(iii) ................................................... 15

Illegal Immigration Reform and Immigrant Responsibility
    Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009 ..................................... 15,16

Copyright Act of 1909, as amended
    17 U.S.C. § 304(c) ................................................................ 17

Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945
    30 U.S.C. § 932(a) ............................................................ 1,6
    30 U.S.C. § 932(*l*) ..................................................... 11,12,14

Longshore and Harbor Workers' Compensation Act,
    33 U.S.C. §§ 901-952
    33 U.S.C. § 921 .............................................................. 1,5,6
    33 U.S.C. § 921(a) ............................................................... 6
    33 U.S.C. § 921(b) ............................................................... 6
    33 U.S.C. § 921(c) ............................................................... 6
    33 U.S.C. § 921(e) ............................................................... 6

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, § 1556 (March 23, 2010) ..................................... *passim*

Federal Rules of Civil Procedure
    Rule 23 ......................................................................... 18

Black Lung Program Regulations:

20 C.F.R. Part 725 ........................................................................ 8

20 C.F.R. § 725.101(a)(10) ........................................................ 12

20 C.F.R. § 725.309(c) ............................................................... 8

20 C.F.R. § 725.309(d) ............................................................... 1,12

20 C.F.R. § 725.310 .................................................................... 8


77 Fed. Reg. 19,456 (March 30, 2012) ....................................... 7

77 Fed. Reg. 19,473 (March 30, 2012)........................................ 5,21

77 Fed. Reg. 19,474 (March 30, 2012) ....................................... 21

Miscellaneous:

156 Cong. Rec. S2084 (daily ed. March 25, 2010) ....................... 8


House Comm. on Ed. and Labor, LEGISLATIVE HISTORY OF THE
FEDERAL COAL MINE HEALTH AND SAFETY ACT AS AMENDED
THROUGH 1974 ........................................................................... 11


House Comm. on Ed. and Labor, BLACK LUNG BENEFITS REFORM
ACT AND BLACK LUNG BENEFITS REVENUE ACT (1979) ............................. 11


Comptroller General of the United States, REPORT TO CONGRESS,
LEGISLATION AUTHORIZED BENEFITS WITHOUT ADEQUATE
EVIDENCE OF BLACK LUNG OR DISABILITY (1982) ..................................... 11

## I.  INTRODUCTION

This case presents questions of statutory interpretation and common law principles of finality.  The Court is asked to decide whether Congress overrode principles of finality when it amended the Black Lung Benefits Act ("BLBA") in the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010) ("PPACA").  Although Section 1556 of PPACA applies retroactively to claims that were filed after January 1, 2005, and that were pending on or after the date PPACA was enacted, nothing in Section 1556 states, let alone, suggests, that it revived or permitted reconsideration of prior, final decisions denying entitlement to survivors' benefits under the BLBA.  And there is no doubt that Mrs. Morgan's claim was fully and finally adjudicated and closed.

The Director, OWCP, joined by Mrs. Morgan and Amicus Curiae in support of Mrs. Morgan, advances an interpretation of Section 1556 that is not supported by the plain language of the statute, its legislative history or core principles of law.  The Director admits that its own regulation, 20 C.F.R. § 725.309(d), bars a subsequent survivor's claim like Mrs. Morgan's claim here.  Federal Respondent's Brief at 9.  And the Director admits that section 1556 does not authorize the reopening of or even address previously denied and closed claims.  Federal Respondent's Brief at 31.  The Director overlooks that the BLBA, by incorporating provisions of the Longshore Act, mandates the finality of decisions.  33 U.S.C. § 921, incorporated by reference into 30 U.S.C. § 932(a).  Instead, without one word in PPACA, the Director asserts with no linguistic support in the text that the plain language of PPACA accommodates subsequent survivors' claims no matter what the basis for the original denial.  Federal Respondent's Brief at 16, 17, 20-27.

The Director argues that its view is supported by the case law even though the Supreme Court has held that ordinary principles of res judicata apply to black lung adjudications and that common law principles of finality apply generally

unless Congress has clearly expressed a specific, clearly articulated intent to override prior, final decisions. *Pittston Coal Group v. Sebben*, 488 U.S. 105 (1988), *Astoria Fed. S & L Ass'n v. Solimino*, 501 U.S. 104 (1991). According to the Director, *Sebben* and principles of res judicata are "simply irrelevant." Federal Respondent's Brief at 32. According to the Director, since neither PPACA nor the BLBA expressly adopted principles of res judicata among their provisions, those principles do not apply and thus every claim is always a new claim subject to new adjudication. This is more trickery than plain language and it is insufficient to overcome well-established principles of finality embodied in the BLBA and reinforced by the Supreme Court. Federal statutes do not preclude readjudication of prior final decisions because it is unnecessary to do so. The Supreme Court has held, consistently, repeatedly and unambiguously, that common law rules of finality always apply unless Congress expressly states otherwise. Congress expressed no such view in Section 1556 of PPACA. That should be dispositive of this case.

The Director then seeks deference for its interpretation, citing *Skidmore v. Swift Co.*, 323 U.S. 134 (1944). It thus claims that deference should be accorded out of respect for its views rather than any direct agency authority to fill in legislative gaps. *See United States v. Mead Corp.*, 533 U.S. 218 (2001) (comparing the various degrees to which deference to agency views are appropriate). This argument also falls flat. The reading here presents only the view *de jour*. The Director's lawyers have expressed many different arguments in their search for support. The Supreme Court has counseled that this type of deference claim should not be honored by the courts. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). The deference claim is further undermined by DOL's failure to address or even cite the relevant

2

provisions of the Act that impose finality on claims decisions. Deference cannot properly be accorded to an interpretation of the wrong words of the wrong statute.

Finally, the Department claims that principles of res judicata are not implicated because PPACA created a new cause of action that is not affected by the prior, final denial. This argument is not presented in the alternative, but as simply another reason why res judicata is irrelevant. If Congress intended to create a new cause of action by virtue of the new legislation, then no plain language or deference argument would be relevant. But no language or legislative history suggest that this is what Congress intended. And, no law supports DOL's theory that changes in criteria for eligibility create a new cause of action. The cases DOL relies on are far off base from the circumstances presented in this case. The authorities that are on point persuasively refute DOL's argument.

The Director's arguments here are an outcome in search of a theory. None of the theories offered by the Director, or Mrs. Morgan or the Amicus provides a reason to deny the parties the benefit of finality. Mrs. Morgan had a full and fair adjudication of her claim. In the absence of express authorization to reconsider her entitlement to black lung benefits where her claim was previously litigated and finally denied, there is no basis to award benefits here. This Court should enforce the finality of the prior decision in this case.

## II.    ARGUMENT IN REPLY

### A.    The Plain Language of Section 1556 Does Not Support the Director's Position on Subsequent Survivors' Claims

Finality of judgments--and an end to litigation--are core principles of law. As the Supreme Court put it:

> There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely,

3

> *interest rei puplicae, ut sit finis litium* [it concerns the state that there be an end to lawsuits], and *nemo debet bis vexari pro una et eadam causea* [no one should be vexed twice with the same cause].

*United States v. Throckmorton*, 98 U.S. 61, 65 (1878) (translations supplied). These principles apply equally to administrative and judicial adjudications, including black lung claims adjudications. Mrs. Morgan's claim was finally denied on the merits, after a full and fair adjudication and appeal, because the evidence failed to establish that Don Morgan's death was due to black lung disease. In the absence of any express exemption from principles of finality, her entitlement to benefits may not be revisited.

The Director argues that PPACA Section 1556 applies to all claims-- miner's claims and survivors' claims, miners' initial claims and subsequent claims, and survivors' initial claims and subsequent claims. It reaches this conclusion by inserting the word "all" into the section identifying the effective date of the amendments. So, according to the Director, the sentence that reads: "The amendments made by this section shall apply with respect to claims filed under part B or part C of the Black Lung Benefits Act … after January 1, 2005, that are pending on or after the date of enactment of this Act" really means: "The amendments made by this section shall apply with respect to [**all**] claims filed under part B or part C of the Black Lung Benefits Act … after January 1, 2005, that are pending on or after the date of enactment of this Act." And the word "claims" in this section really means causes of action. The Director thus revises the "plain words" to suit its argument. This kind of argument does not support a plain language theory of interpretation because the language interpreted is supplied by the interpreter, not by the statute. The argument cannot work.

The plain words of the statute do not bear the weight the Director imposes on them or in any way undo the finality of a prior award. This is especially so

4

where, as here, the Secretary has stated in the Federal Register that the view it now takes with respect to refiled survivors' claims "could arguably be considered an agency policy choice" notwithstanding its belief that the position is fully justified under the plain language of the amendments. *See* 77 Fed. Reg. 19,473 (col. c).

The fact that new claims may be treated in a particular way does not repeal principles of res judicata for previously and finally adjudicated claims. The Director's argument is a tautology that has neither legal, linguistic, nor logical merit. The Supreme Court has held that new legislation, no matter how well-intended, must be applied only to judgments still on appeal that were rendered before the law was enacted; it may not be applied to judgments that are final. "Having achieved finality,… a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law application *to that very case* was something other than what the courts said it was." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995). Legally, all that matters is that there is no express waiver of res judicata for previously denied claims. In the absence of any express exemption from principles of finality, Mrs. Morgan's entitlement to benefits may not be revisited because Congress changed the legal standards for eligibility. No statutory provision allows this result. And there is no indication of such an intent in the legislative history added after PPACA was enacted, to the extent that such post-hoc pronouncements are entitled to any weight.

DOL's "plain language" argument ultimately falters because it fails to consider the plain language that imposes finality on claim determinations. Section 921 of the Longshore Act, entitled "Review of compensation orders," defines finality for claims under the Longshore Act and, by incorporation, for claims under the BLBA. First, it specifies when compensation orders are effective and final:

5

> (a)    **Effectiveness and finality of orders**
> A compensation order shall become effective when filed in the office of the deputy commissioner .... and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subsection (b) of this section, shall become final at the expiration of the thirtieth day thereafter.

33 U.S.C. § 921(a).  Subsection (b) provides for review of decisions and orders of administrative law judges by the Benefits Review Board.  If no review is sought, the order becomes final under subsection (a).  33 U.S.C. § 921(b).  And, subsection (c) provides that "[a]ny person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court, within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside." 33 U.S.C. § 921(c).  Similarly, if no circuit court review is sought, the Board's decision becomes final under subsection (a).  Finally, subsection (e) provides:

> **(e)  Institution of proceedings for suspension, setting aside, or enforcement of compensation orders**
> Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of this title.

30 U.S.C. § 921(e).   Section 21 is applicable verbatim to black lung claims.  30 U.S.C. § 932(a).

Section 1556 does not amend 33 U.S.C. § 921 or 30 U.S.C. § 932(a).  A plain language analysis must focus on the plain language that addresses the finality of decisions in black lung claims.  The Director's so-called plain language analysis ignores all of the relevant language, adds words to relevant language, offers a definition to otherwise plain words, and then declares a plain language victory for its argument.  It would be hard to imagine a weaker or less persuasive approach to a plain language analysis.  The Director's approach to plain language would reopen every matter under every federal statute that was amended if the amendment would

6

have helped a previously unsuccessful litigant.  No law supports that outcome for every federal statute or for the BLBA.  No principle of statutory interpretation honors an approach that ignores all the relevant words of the statute.

### B.     No Deference Is Due to an Agency's Position That Is a Work in Progress Expressed for the First Time in a Litigation Brief

The Director seems to recognize that its plain language argument has "as many holes as an ordinary piece of Swiss cheese."  *See Decker v. United States*, 140 F.2d 375, 377 (4th Cir. 1944).  Thus the Director, as well as Mrs. Morgan and Amicus, retreat to a request for deference for DOL's interpretation.  As the Supreme Court has explained:

> The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position, …

*United States v. Mead Corp.*, 533 U.S. at 228 (footnotes omitted).  Here, the Director's request for deference falters at the starting gate for PPACA is not a statute the Department of Labor is charged with administering.  Therefore, no deference to its interpretation of PPACA is due here.  *See Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 133 n.5 (1997) (refusing to defer to the Department of Labor's interpretation of the Administrative Procedure Act because "(1) The APA is not a statute that the Director is charged with administering. … (2) This interpretation does not appear to be embodied in any regulation or similar binding policy pronouncement to which such deference would apply. … (3) The interpretation is couched in a logical non sequitur."). [1]

---

[1]    The Director's interpretation here does not appear in any regulation or any binding policy pronouncement which would warrant deference.  At most, it appears in a Notice of Proposed Rulemaking, issued long after PPACA was enacted and that has not been finalized.  *See* 77 Fed. Reg. 19,456 (March 30, 2012); Federal Respondent's Brief at 9 n.6.

Nor does the Director's or amicus' interpretation find any support in the legislative history of PPACA. Section 1556 has no legislative history. But, both the Director and amicus assert that their position is supported by a post-enactment statement of Senator Byrd because the Senator declared that section 1556 was to apply to all claims filed after January 1, 2005, pending on or after its date of enactment. Federal Respondent's Brief at 36; Amicus Brief at 8-9. The fact that the examples cited by the Senator did not include finally denied and closed claims is of no moment to the Director or Mrs. Morgan. According to the Director, those examples were merely illustrative not exhaustive. The argument overlooks the Senator's discussion. This was, in fact, an exhaustive identification of the claims that were subject to Section 1556. He explained:

> It is clear that the section will apply to all claims that will be filed henceforth, including many claims filed by miners whose prior claims were denied, or by widows who never filed for benefits following the death of a husband. But section 1556 will also benefit all of the claimants who have recently file a claim, and are awaiting or appealing a decision or order, or who are in the midst of trying to determine whether to seek a modification of a recent order.

> Section 1556 applies immediately to all pending claims, including claims that were finally awarded or denied prior to the date of enactment of the Patient Protection and Affordable Care Act, for which the claimant seeks to modify a denial, or for which other actions are taken in order to modify an award or denial, in accordance with 20 CFR 725.309(c) or 725.310. Section 1556 applies even if a final order is modified, or actions are taken to bring about the modification of an order, subsequent to the date of enactment of the Patient Protection and Affordable Care Act, in accordance with the sections of Part 725 that I mentioned.

156 Cong. Rec. S2083-84 (March 25, 2010). Only by selectively quoting Senator Byrd's statement can the Director contend that the statement is merely illustrative and not exhaustive. Nor is the Director's support for the claim that the Senator's list was not exhaustive accurate. The Director points to the fact that the Senator did not specifically mention first-time filings by miners as proof that no weight

8

should be placed on his failure to include subsequent survivors' claims as claims subject to section 1556. Federal Respondent's Brief at 37. That is not accurate. Such claims are included in his statement that Section 1556 would apply to "all claims that will be filed henceforth"

Mrs. Morgan and the amicus curiae take a different approach. Mrs. Morgan argues that Congressional intent as well as the remedial purpose of the Act supports her claim. Response Brief at 31-37. Amicus too asserts that Congress intended to depart from principles of res judicata in PPACA and that the BLBA should be liberally construed. Amicus Brief at 7-8, 10-11. Amicus accuses Peabody of "cherry picking" portions of Senator Byrd's statement, but provides no words that were omitted that make a difference. Amicus's reference to the Senator's statement at the end of his speech--that he looks forward to working to ensure that claimants get a fair shake--does not disclose any Congressional intent to waive finality. Amicus Brief at 8. It discloses only his intent to champion benefits for claimants.

According to Mrs. Morgan, the word "equity" in the title of Section 1556 somehow proves that the section was meant to apply to subsequent survivors' claims. She argues that the Court's decision in *West Virginia CWP Fund v. Stacy*, 671 F.3d 378, 388 (4th Cir. 2011), *cert. denied*, No. 11-1342 (2012), supports this view. Response Brief at 33. Even the Director acknowledges that *Stacy* applies only to survivors' original claims. Federal Respondent's Brief at 7 n.5. There is no support for the conclusion advocated by Mrs. Morgan and Mrs. Morgan provides none. That the section is entitled "equity to certain survivors" does not support the view that survivors who have filed for benefits without success should have a second chance.

9

Nor does the remedial purpose of the Act support Mrs. Morgan's argument. Mrs. Morgan mentions the remedial purpose of the Act in five different places. Response Brief at 13, 14, 20, 31-36, 37.  But no amount of repetition is persuasive. The Supreme Court has rejected the notion that "the statute at hand should be liberally construed to achieve its purpose," terming the argument as "that last redoubt of losing causes."  *Director, OWCP v. Newport News Shipbldg & Dry Dock Co.*, 514 U.S. 122, 135 (1995).  *Accord Morrison-Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 635 (1983); *Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 258, 268, 279 (1980).  *See also Kucana v. Holder*, 558 U.S. _ (2010) ("[N]o law pursues its purpose at all costs, and … the textual limitations upon a law's scope are not less a part of hits 'purpose' than its substantive authorizations.") (quoting *Rapanos v. United States*, 547 U.S. 715, 752 (2006)).  *See also Jordan v. Director, OWCP*, 892 F.2d 482, 486-87 (6th Cir. 1989) (recognizing that "miners and their survivors must strictly adhere to the substantive and procedural requirements of the Black Lung Benefits Act and its implementing regulations.… Although these requirements may seem harsh to individual claimants, they further the goals of providing each claimant with a just, efficient and final resolution of his or her black lung benefit claim at the agency level.").  The remedial or liberal purpose of the statute is not a proper lens through which to view this case, let alone expand the principles of finality that protect all parties to these claims.

The Supreme Court's admonition is particularly relevant in this setting, where all the relevant law, and all of the words of the statute addressing finality uniformly refute what seems to be respondents' and amicus' main argument.  The plain text says decisions are final.  The law overwhelmingly favors finality.  And, it is hard even to say that Section 1556 is ambiguous in addressing finality when it

10

does not do so.  So the argument here seems to be that whatever the law may be, employers are not entitled to any reasonable application of finality.

The Director and amicus's attempt to argue that their position is consistent with the legislative history of the 1977 amendments that first implemented the automatic entitlement provision is incorrect if not sloppy.  The 1972 amendments to the BLBA added automatic entitlement for the survivors of previously entitled miners.  Senate Subcomm. on Labor, Comm. on Labor and Public Welfare, LEGISLATIVE HISTORY OF THE FEDERAL COAL MINE HEALTH AND SAFETY ACT AS AMENDED THROUGH 1974 at 2135.  The 1977 amendments that added 30 U.S.C § 932(*l*) were intended to expedite processing that had bogged down at DOL.  This provision did not create a new entitlement, but only a new procedure.  *See generally*, House Committee on Ed. and Labor, BLACK LUNG BENEFITS REFORM ACT AND BLACK LUNG BENEFITS REVENUE ACT (1979).  The Director and amicus ignore or misstate this history as well as the legislative history to the 1981 amendments where the provision was repealed.  That repeal was justified by a report of the Comptroller General to Congress that in 84% of 205 claims approved, the Department of Labor had awarded benefits where the proof of disability or death from coal workers' pneumoconiosis was inadequate.  Comptroller General, REPORT TO THE CONGRESS OF THE UNITED STATES:  LEGISLATION AUTHORIZED BENEFITS WITHOUT ADEQUATE EVIDENCE OF BLACK LUNG OR DISABILITY (GAO Jan. 19, 1982), available at http://www.gao.gov/products/HRD-82-26 (last viewed Jan. 26, 2013).  Deference is not appropriate under these circumstances.

Finally, the Director's position with respect to PPACA has been a moving target.  All of the operative pieces have been evolving over time. The Director's definition of "claim" is a case in point.  For purposes of the triggering date in section 1556(c), the Director argued that the term "claims" meant "claims" filed by

11

miners and survivors because "both miners and their survivors may file claims under the BLBA." This Court found that interpretation persuasive. *Stacy*, 671 F.3d at 388.

Later, the Director argued that "claim" meant a burden of proof, as this Court held in *Stacy*, 671 F.3d 378, at the Director's urging. The Director suggests this definition at one point in its brief to this Court as well. Federal Respondent's Brief at 24 (""While Section 932(*l*), by its terms, provides that survivors need not file new formal claims for benefits, its real purpose is to relieve survivors of the burden of proving that miners' death were due to pneumoconiosis."). To escape the bar of res judicata for multiple claims filed by survivors, however, the Director now argues that "claim" means "cause of action" or a "notification." *Id.* at 23. As set forth below, this new view is not only wrong, but whether right or wrong, the Director's position is neither consistent nor entitled to deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. at 212 ('Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."). The one document the Director fails to consult is the Code of Federal Regulations that the Secretary drafted for application in the black lung program. The Secretary's regulations define "claim" as "a written assertion of entitlement to benefits under section 415 or part C of title IV of the Act, submitted in a form and manner authorized by the provisions of this subchapter." 20 C.F.R. § 725.101(a)(10). That regulation, not the Director's newfound definition, controls here and the regulation does not support the view that a claim is a cause of action. It shows that what Mrs. Morgan filed initially—a claim of entitlement—is precisely what she filed subsequently—another claim of entitlement. That claim is barred by DOL's own regulations. 20 C.F.R. § 725.309(d).

12

Ultimately, any deference claim falters because the statutory language addressing finality and thus res judicata is ignored altogether. An agency can hardly claim deference for its interpretation of the wrong language. And although deference may be appropriate where the agency brings special expertise to the discussion or presents a balanced, consistent and thoughtful analysis, this claim for *Skidmore* deference is invoked without any of the indicia that it is appropriate. The claim for deference here is empty and no more than a demand that the Court agree with respondents for no valid reason at all.

In order to build a case for *Skidmore* deference, the Director and amicus need to upset the apple cart in a dozen ways. Here, the Director claims "*Skidmore*" respect for a claim of deference that ignores the relevant words, misstates the legislative record of not only Section 1556 of PPACA, but of the 1972, 1977, and 1981 amendments to the BLBA, ignores the agency's own regulation, and argues a meaning that the language of Section 1556 that its words cannot bear. To top it off, the claim is supported by arguments and relies on cases that have are inconsistent with DOL's practice for many years. The Supreme Court has never accorded deference to such an agency view.

C.    Ordinary Principles of Finality Bar "Refiled Claims" Because the Notion that Section 1556 Creates a New Cause of Action Lacks Any Relevant Support

In its opening brief, Peabody argued that Section 1556 does not create a new cause of action, but simply changes the eligibility criteria for certain survivor benefits under the BLBA. The identity of causes of action is not dependent upon the legal standards that are applied in adjudicating them; they are dependent on the circumstances or transactions in life that caused the dispute to arise. The law on this point is uniform and consistent and accords with the law of this Court. Mrs.

13

Morgan's black lung claim arose out alleged harm to her husband as a result of his coal mine employment with Peabody. Nothing changed on that account when Congress enacted Section 1556. Congress did not create a new cause of action. It changed only the entitlement criteria to be applied to the adjudication of the claim and, in fact, changed little more than the procedures and filing requirements for first-time claims of survivors of previously entitled miners. In this setting, there is virtually no law to support a waiver a res judicata to permit a previously unsuccessful litigant to take advantage of more favorable criteria. Mrs. Morgan is in no different situation than the claimants in *Pittston Coal Group* who asked the Supreme Court for a waiver of res judicata so they could take advantage of more favorable law. The Supreme Court denied those claimants the ability to refile. The Supreme Court's ruling in *Pittston Coal Group* should be dispositive of Mrs. Morgan's claim. It makes no legal difference that in *Pittston Coal*, the new criteria were based upon a new judicial interpretation of a statute and here, there was an amendment to a statute. The arguments are functionally identical.

The Director and Mrs. Morgan now have conducted a search of authorities looking over the body of U.S. law for some remote analogy in case law to support the theory that the prior survivor's claim is "an entirely unrelated fact." Federal Respondent's Brief at 26. None are applicable to this case. According to the Director and Mrs. Morgan, section 932(*l*) provides a new or different cause of action, one that could not have been brought at the time the first "claim" was filed. Thus Mrs. Morgan's second "claim" is not barred by principles of res judicata. The case law the Director and Mrs. Morgan have found to support their theory that a survivor's entitlement under PPACA is a new cause of action that is unaffected by res judicata provide no genuine support; they are either distinguishable or irrelevant.

14

For example, the Director argues that *Alvear-Velez v. Mukasey*, 540 F.3d 672 (7th Cir. 2008), and *Maldonado v. U.S. Att'y General*, 664 F.3d 1369 (11th Cir. 2011), support their conclusion and that the facts in that case bring its views "into clear relief." Federal Respondents' Brief at 42. *Alvear-Velez* involved a second attempt by the Department of Homeland Security ("DHS") to deport Mr. Alvear-Velez under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). The first effort failed because the crime that Mr. Alvear-Velez pleaded guilty to (sexual assault of a minor family member) did not result in a sentence of one or more years of confinement, which was, at the time, a condition of deportation under the INA. 8 U.S.C. § 1101(a)(43). Six years later, DHS tried again. By then, Congress had amended the statutory definition of aggravated felony to include sexual abuse of a minor, and directed that this new definition apply retroactively, regardless of how long ago the conviction was entered. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, § 309, 110 Stat. 3009, § 321(a)(1), (b) ("EFFECTIVE DATE OF DEFINITION.-Section 101(a)(43) (8 U.S.C. 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."). The Seventh Circuit thus held that the doctrine of res judicata did not apply because IIRIRA provided an independent basis for relief which did not exist when the prior action was brought and Congress had expressly stated an intent to apply the amended definition retroactively even though the events giving rise to the proceeding had been the subject of litigation and had occurred prior to the statutory amendments. *Alvear-Velez*, 540 F.3d at 679. The court added that its holding was "limited to the peculiar circumstances before us--the res judicata

15

effect of an administrative final judgment rendered prior to a congressional decision to expand the avenues of relief available and to make those additional avenues of relief retroactive." *Id.* at 681. The Eleventh Circuit's decision in *Maldonado* accords with *Velez.* DOL's argument does not benefit from a case based on Congress's express language, stating an intent to reopen closed matters.

Congress did not enact a similar provision when enacting Section 1556 of PPACA. Moreover, in March 2012, the Supreme Court reached a different result when it came to another aspect of IIRIRA. *See Vartelas v. Holder*, 132 S.Ct. 1479 (2012). There, whether Congress directed that another provision of the IIRIRA (8 U.S.C. § 1101(a)(13)(C)(v)) apply retroactively was not so clear. Therefore, "[g]uided by the deeply rooted presumption against retroactive legislation," the Supreme Court held that where the relevant provision of the statute attached a new condition in respect to past events, it could be applied only prospectively. *Vartelas*, 132 S.Ct. at 1484. As the Court explained:

> The presumption against retroactive legislation, the Court recalled in *Landgraf*, "embodies a legal doctrine centuries older than our Republic." *Id.* at 265. Several provisions of the Constitution, the Court noted, embrace the doctrine, among them, the *Ex Post Facto* Clause, the Contract Clause, and the Fifth Amendment's Due Process Clause. *Id.*, at 266. Numerous decisions of this Court repeat the classic formulation Justice Story penned for determining when retrospective application of a law would collide with the doctrine. It would do so, Story stated, when such application would "tak[e] away or impai[r] vested rights acquired under existing laws, or creat[e] a new obligation, impos[e] a new duty, or attac[h] a new disability, in respect to transactions or considerations already past." *Society for Propagation of Gospel v. Wheeler*, 22 F. Cas. 756, 767 (No. 13,156) (CC NH 1814). *See, e.g., INS v. St. Cyr*, 533 U. S. 289, 321 (2001) (invoking Story's formulation); *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U. S. 939, 947 (1997); *Landgraf*, 511 U. S., at 283

*Vartelas*, 132 S.Ct. at 1486-87. The Supreme Court recognized that where Congress removed a defense that did not apply prior to a statutory amendment, the

amendment could not be applied retroactively. *Id.*, citing *Hughes Aircraft*, 520 U.S. at 947. "The essential inquiry, as stated in *Landgraf*, 511 U.S. at 269-70, is 'whether the new provision attaches new legal consequences to events completed before its enactment.'" *Vartelas*, 132 S.Ct. at 1491. The Court found that is just what occurred in that case and it is just what occurred here. The immigration cases cited refute DOL's theory.

Reliance on *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002), is misplaced as well. There, Joe Simon, author of the Captain America Comics filed several lawsuits, one in state court and one in federal court, seeking rights to the profits derived from the comic books during the initial twenty-eight year term of his copyright and his exclusive right to renew the copyright when the initial term expired. In 1969, the parties entered into a settlement agreement in which Simon stipulated that his contribution was done as an employee for hire. He assigned his rights in the Captain America character and Captain America Comics to Timely Publications, Marvel's predecessor, and the parties agreed to the dismissal with prejudice of "all claims and matters alleged, threatened, implied or set forth in any of the pleadings filed by [Simon]" in both courts *See id.* at 283-84. In 1976, Congress amended the Copyright Act of 1909, among other ways, by extending the renewal term for an additional nineteen years, and allowing authors to terminate a grantee's rights notwithstanding any agreement to the contrary "other than a copyright in a work made for hire." *See* 17 U.S.C. § 304(c). Simon then served a termination notice on Marvel pursuant to section 304 of the Copyright Act, seeking to end the earlier settlement agreement. Marvel disagreed because Simon had stipulated that the work was for hire. The Second Circuit found that to the extent that the settlement agreement was construed to extinguish Simon's termination rights, it was void as an "agreement to the contrary" under

17

section 304(c).  *Id.* at 298-92.  According to the court, since the statute did not address whether settlement agreements stating a work was created for hire could fall within the "any agreement to the contrary" phrase, resolution required consideration of the legislative intent and purpose of the provision.  *See id.* at 289-90.  With respect to the Copyright Act's amendments to the termination provision, the statute may not have been clear, but the legislative history was--and it was "expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product" and to protect authors from unequal bargaining positions.  *See Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 & n.39 (1985).  No such intention appears in Section 1556.

Mrs. Morgan and amicus offer a different view.  They claim res judicata does not bar a second claim because the two claims do not arise out of the same transaction.  Response Brief at 20; Amicus Brief at 14.  In order to make this argument, however, Mrs. Morgan and amicus confuse "transaction" and "cause of action."  They, like the Director, argue that Section 1556 provides a new cause of action and res judicata does not bar claims that did not exist at the time of the prior litigation.  Response Brief at 22, citing *Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir. 1991); Amicus Brief at 15.[2]  Reliance on *Meekins* is misplaced.  There, two employees sued their union alleging breach of the union's

---

[2]    Amicus relies on an unpublished decision of the Fourth Circuit which supports the view that the claims arise out of the same underlying transaction.  *See Saudi v. Ship Switzerland*, 93 Fed. Appx. 516 (4th Cir. 2004) (holding "this case obviously involves the same cause of action for purposes of claim preclusion, because both this action and the Texas action arise out of the same core of operative facts — namely, the accident in which the defective crane on the Marine Atlantic collapsed, causing Captain Saudi's injuries.").  Amicus also relies on a published decision that addresses class certifications under Fed. R. Civ. P. 23.  This authority does not appear to be relevant to the question presented here.

duty of fair representation and prevailed in district court. None of the parties appealed, but two months later, the union refused to comply with the court's order, and six months later, the employees again filed suit against the union. The Court, in a divided opinion,[3] rejected the union's defense that the second suit was barred on res judicata grounds because it found that the second suit arose from a separate transaction from the first case, *i.e.*, the union's failure to pay the damages ordered by the district court. The Fourth Circuit agreed that the second action arose from a claim separate from the first, finding that "res judicata has very little applicability to a fact situation involving a continuing series of acts, for generally, each act gives rise to a new cause of action." *Meekins*, 946 F.2d at 1058 (citation omitted).

A subsequent survivor's claim stands in marked contrast. In her first claim, Mrs. Morgan asserted her entitlement to survivor's benefits arising out of Mr. Morgan's death. That is identical to what she asserted in her second or subsequent claim. No new relevant facts occurred. The cases arise out of the same underlying events and seek the same relief.[4] Section 1556 does not create a new cause of action for her. In fact, the Director's argument suggests the improbable theory that every time Congress amends a law, any benefit it may have for people who lost in prior litigation becomes available and everyone can just file a new law suit to take advantage of the change in law if it benefits them. "This is not the way the law works." *Pittston Coal Group*, 488 U.S. 122. Courts do not have the authority to waive finality on their own. Under Section 1556, res judicata applies.

---

[3] Judge Hall would have denied the case strictly on res judicata grounds because the damages awarded in both cases were identical.

[4] The Board's decisions recognize this fact. *See Wojtowicz v. Duquesne Light Co.*, 12 Black Lung Reporter (MB) 1-162 (Ben. Rev. Bd. 1989) (holding that in cases in which a survivor has requested modification of the denial of a claim within one year of that decision, the sole ground available for modification necessarily is that a mistake in a determination of fact occurred; no change in facts could occur).

Both Mrs. Morgan and the Director argue that the change wrought by Section 1556 gave rise to a new cause of action. That too is not accurate. Section 1556, by reviving the automatic entitlement provision, revived a conclusive presumption that the miner's death was due to pneumoconiosis based on the fact that he was deemed eligible for benefits at the time of his death. That was a presumption that this Court had already accepted prior to PPACA. *See also Hill v. Director, OWCP*, 562 F.3d 264 (3d Cir. 2009). It did not give rise to a new cause of action; it lightened survivors' burden of proof to establish survivor entitlement. None of the cases relied on by the Director or Mrs. Morgan provide a basis for relief from res judicata or diminish the significance of the unanimous holding in *Pittston Coal*.

The Director argues that concerns about conserving judicial resources and protecting the parties from the expense and vexation of multiple lawsuits that normally influence whether the common law doctrine of res judicata and collateral estoppel apply because entitlement is automatic and it applies to only a limited number of people. The argument is akin to the argument that the government made in *Vartelas*--that Mr. Vartelas could avoid the potential that he would be denied reentry to the United States by not going outside the country. The Supreme Court characterized the argument as disingenuous. The Director's argument is similarly insincere. It does not consider the unanticipated expense or burden imposed on employers by reviving "claims" that had been fully litigated and finally denied where finality was properly expected.

The Director's assessment of the limited number of claims involved also is irrelevant and unproved. To this Court, the Director claims that of 1,040 dependents who could potentially file subsequent claims, there have been only about 130 refilings as of December 2012. Federal Respondent's Brief at 27 n.14.

In the Federal Register, however, where the Department sought to downplay the financial impact of this rule, it stated that "there are only 445 survivors of awarded miners who have had a prior claim denied and who could not be confirmed as deceased through the SSA Death Master file." 77 Fed. Reg. 19,473 (col. c) (March 30, 2012). Based on the Department's speculation that some portion of that number of survivors were deceased, or re-married or would not refile or, would be the responsibility of the Black Lung Disability Trust Fund, DOL estimated that only 317 survivors would refile for benefits. *Id.* at 19,474 (col. a). *But see id.* (predicting 368 "actual and predicted" awards under the automatic entitlement provision). In any case, the size of the impact has no bearing on the application of res judicata and is not a reason to override this important and relevant principle of law.

## III. CONCLUSION

The decision in this case should be reversed.

Respectfully submitted,
s/Mark E. Solomons
Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2361

21

## CERTIFICATE OF COMPLIANCE

**Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 6,928 words (exclusive of the cover, table of contents and table of authorities).  I relied on my word processor to obtain the count and it is Microsoft Word 2003.

**TypeFace**

In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times Roman, 14 pt.




s/Laura Metcoff Klaus
Laura Metcoff Klaus

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2013, copies of the foregoing Petitioner's Reply Brief were served on the counsel of record for the parties electronically through the CM/ECF notification system:

s/Laura Metcoff Klaus
Laura Metcoff Klaus